**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MISSOURI**

| | |
|---|---|
| **TYRONE KENNETH JOHNSON,** individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**SOUTHEAST SERIES OF LOCKTON COMPANIES, LLC** and **LOCKTON COMPANIES, LLC**<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Tyrone Kenneth Johnson ("Plaintiff"), on behalf of all others similarly situated, brings this action against Southeast Series of Lockton Companies, LLC, ("Southeast Series") and Lockton Companies, LLC (together, "Defendants"). The following allegations are based on Plaintiff's knowledge, investigations of counsel, facts of public record, and information and belief.

## NATURE OF THE ACTION

1. Plaintiff seeks to hold Defendants responsible for the injuries Defendants inflicted on Plaintiff and similarly situated persons ("Class Members") due to Defendants' impermissibly inadequate and unlawful data security, which caused the personal information of Plaintiff and those similarly situated to be accessed and obtained by cybercriminals (the "Data Breach") on November 20, 2024.

2. Defendant is a company that provides insurance, risk management, and employee-benefit management services to its clients.

3. Plaintiff and Class Members are current and former benefit recipients of Defendant's clients who, in order to obtain and facilitate employment benefit programs from Defendant's clients, were and are required to entrust Defendant with their sensitive, non-public information. Defendant could not perform its operations or provide its services without collecting Plaintiff's and Class Members' information.

4. The data which Defendants collected from the Plaintiff and Class Members, and which was exfiltrated by cybercriminals from Defendants, was highly sensitive. The exfiltrated data included personal identifying information ("PII") and personal health information ("PHI" and, together with Personal Information, "Personal Information") including, but not limited to, names and Social Security numbers, dates of birth, and medical insurance information.

5. Prior to and through the date of the Data Breach, Defendants obtained Plaintiff's and Class Members' Personal Information and then maintained that sensitive data in a negligent and/or reckless manner. As evidenced by the Data Breach, Defendants inadequately and unlawfully maintained their networks, platforms, and software—rendering these easy prey for cybercriminals.

6. The risk of the Data Breach was known to Defendants. Thus, Defendants were on notice that their inadequate data security created a heightened risk of exfiltration, compromise, and theft.

7. After the Data Breach, Defendants failed to provide timely notice to the affected Plaintiff and Class Members, thereby exacerbating their injuries. Ultimately, Defendants deprived Plaintiff and Class Members of the chance to take speedy measures to protect themselves and mitigate harm. Simply put, Defendants impermissibly left Plaintiff and Class Members in the dark—thereby causing their injuries to fester and the damage to spread.

8. Even when Defendants finally notified Plaintiff and Class Members, Defendants failed to adequately describe the Data Breach and its effects, as well as the measures Defendants took to prevent data breaches from occurring in the future.

9. Today, the identities of Plaintiff and Class Members are in jeopardy—all because of Defendants' negligence. Plaintiff and Class Members now suffer from a present and continuing risk of fraud and identity theft and must now constantly monitor their financial accounts.

10. Armed with the PII and PHI stolen in the Data Breach, criminals can commit a boundless litany of financial crimes. Specifically, and without limitation, criminals can now open new financial accounts in Class Members' names, take out loans using Class Members' identities, use Class Members' names to obtain medical services, use Class Members' identities to obtain government benefits, file fraudulent tax returns using Class Members' information, obtain driver's licenses in Class Members' names (but with another person's photograph), and give false information to police during an arrest.

11. Plaintiff and Class Members will likely suffer additional financial costs for purchasing necessary credit monitoring services, credit freezes, credit reports, or other protective measures to deter and detect identity theft.

12. Plaintiff and Class Members have suffered—and will continue to suffer—from the loss of the benefit of their bargain, unexpected out-of-pocket expenses, lost or diminished value of their Personal Information, emotional distress, and the value of their time reasonably incurred to mitigate the fallout of the Data Breach.

13. Through this action, Plaintiff seeks to remedy these injuries on behalf of themselves and all similarly situated individuals whose Personal Information was exfiltrated and compromised in the Data Breach.

14. Plaintiff seeks remedies including, but not limited to, compensatory damages, treble damages, punitive damages, reimbursement of out-of-pocket costs, and injunctive relief—including improvements to Defendants' data security systems, future annual audits, and the appointment of an independent and qualified cyber auditor to monitor Defendant's cyber hygiene, all of which will be funded by  Defendants.

## PARTIES

15. Plaintiff Johnson is a natural person and resident and citizen of Ohio. Plaintiff Johnson received a letter from Defendant dated March 28, 2025, informing him of the Data Breach ("Data Breach Notification"), as described more fully below.

16. Defendant Lockton Companies, LLC, is a limited liability company. It is headquartered in Kansas City, Missouri.

17. Defendant Southeast Series of Lockton Companies, LLC, is a series limited liability company. It is headquartered in Kansas City, Missouri.

## JURISDICTION AND VENUE

18. This Court has original subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), because this is a class action involving more than 100 putative class members and the amount in controversy exceeds $5,000,000, exclusive of interest and costs. Minimal diversity is established because many members of the class are citizens of states different than that of Defendants.

19. This Court has personal jurisdiction over Defendants, because both Defendants maintain their principal places of business in this district.

20. Venue is proper in this District under 28 U.S.C. §§ 1391(a)(2), 1391(b)(2), and 1391(c)(2) because substantial part of the events giving rise to the claims emanated from activities within this District, and Defendants maintains their principal places of business in the jurisdiction.

## FACTUAL ALLEGATIONS

### *Defendants Collected and Stored the Personal Information of Plaintiff and Class Members*

21. Defendant Lockton Companies, LLC, is a company that provides insurance, risk management, and employee-benefit management services to its clients. Defendant

Southeast Series of Lockton Companies, LLC, is a series LLC of Lockton Companies, LLC.

22. Plaintiff and Class Members are current and former benefit recipients of Defendants' clients.

23. As a condition of employment-related benefits from Defendants' clients, Plaintiff and Class Members were required to entrust Defendants with highly sensitive Personal Information.

24. Defendants received and maintained the Personal Information of its clients' employees, such as individuals' names, dates of birth, Social Security numbers, and information concerning their medical insurance. Upon information and belief, these records were, and continue to be, stored on Defendant's computer systems.

25. Because of the highly sensitive and personal nature of the information Defendants acquire and store, Defendants knew or reasonably should have known that they stored Personal Information and were therefore obligated to comply with industry standards related to data security and all federal and state laws protecting customers' Personal Information and provide adequate notice to clients and their employees if Personal Information is disclosed without proper authorization.

26. When Defendants collects sensitive information, they promises to use reasonable measures to safeguard Personal Information from theft and misuse.

27. By obtaining, collecting, receiving, and/or storing Plaintiff's and Class Members' Personal Information, Defendants assumed legal and equitable duties and

knew, or should have known, that they were thereafter responsible for protecting Plaintiff's and Class Members' Personal Information from unauthorized disclosure.

28. Indeed, Defendants acknowledged that "[p]ursuant to applicable data protection laws, Lockton is deemed to be a 'data controller.'"[1]

29. Plaintiff and Class Members have taken reasonable steps to maintain the confidentiality of their Personal Information, including but not limited to, protecting their usernames and passwords, using only strong passwords for their accounts, and refraining from browsing potentially unsafe websites.

30. Plaintiff and Class Members relied on Defendants to keep their Personal Information confidential and securely maintained, to use this information for business and healthcare purposes only, and to make only authorized disclosures of this information.

31. Defendants could have prevented or mitigated the effects of the Data Breach by better securing their network, properly encrypting their data, or selecting better information technology partners.

32. Defendants' negligence in safeguarding Plaintiff's and Class Members' Personal Information was exacerbated by repeated warnings and alerts directed to protecting and securing sensitive data, as evidenced by the trending data breach attacks in recent years.

[1] *US Terms of Business*, Lockton, *available at* https://global.lockton.com/us/en/terms-of-business (last accessed April 7, 2025).

33. Despite the prevalence of data security compromises and the frequent public announcements of data breaches, Defendants failed to take appropriate steps to protect Plaintiff's and Class Members' Personal Information from being compromised.

34. Defendants failed to ensure the proper monitoring and logging of the ingress and egress of network traffic.

35. Defendants failed to ensure the proper monitoring and logging of file access and modifications.

36. Defendants failed to ensure the proper training of their own and their technology partners' employees with regard to cybersecurity best practices.

37. Defendants failed to ensure fair, reasonable, or adequate computer systems and data security practices to safeguard the Personal Information of Plaintiff and Class Members.

38. Defendants failed to timely and accurately disclose that Plaintiff's and Class Members' Personal Information had been improperly acquired or accessed.

39. Defendants knowingly disregarded standard information security principles, despite obvious risks, by allowing unmonitored and unrestricted access to unsecured Personal Information.

40. Defendants failed to provide adequate supervision and oversight of the Personal Information with which they were and are entrusted, despite the known risk and foreseeable likelihood of breach and misuse, which permitted an unknown third party to gather Personal Information of Plaintiff and Class Members, misuse the Personal Information, and potentially disclose it to others without consent.

41. Upon information and belief, Defendants failed to ensure the proper implementation of sufficient processes to quickly detect and respond to data breaches, security incidents, or intrusions.

42. Upon information and belief, Defendants failed to ensure the proper encryption of Plaintiff's and Class Members' Personal Information and monitor user behavior and activity to identify possible threats.

***The Data Breach***

43. On or about March 28, 2025, Defendant Southeast Series mailed a Data Breach Notification letter, attached hereto as Exhibit "A," to Plaintiff and Class Members, which alerted Plaintiff and Class Members of the compromise of their Personal Information.

44. The Data Breach Notification stated that on November 20, 2024, Defendant Southeast Series discovered suspicious activity on its computer system. After investigation, Defendant Southeast Series determined that an unauthorized third party had accessed the Lockton environment and obtained files containing the Personal Information of Plaintiff and Class Members.

45. It is likely the Data Breach was targeted at the Defendants due to their role as organizations that collect, create, and maintain Personal Information.

46. Defendant Southeast Series completed its investigation on February 5, 2025. Defendant Southeast Series untimely and unreasonably delayed in providing notice of the Data Breach to Plaintiff and Class Members.

47. Time is of the essence when highly sensitive Personal Information is subject to unauthorized access and/or acquisition.

48. The disclosed, accessed, and/or acquired Personal Information of Plaintiff and Class Members is likely available on the Dark Web. Hackers can access and then offer for sale the unencrypted, unredacted Personal Information to criminals. Plaintiff and Class Members are now subject to the present and continuing risk of fraud, identity theft, and misuse resulting from the possible publication of their Personal Information onto the Dark Web. Plaintiff and Class Members now face a lifetime risk of identity theft, which is heightened here by unauthorized access, disclosure, and/or activity by cybercriminals on computer systems containing sensitive personal information.

49. In sum, Defendants largely put the burden on Plaintiff and Class Members to take measures to protect themselves.

50. Time is a compensable and valuable resource in the United States. According to the U.S. Bureau of Labor Statistics, 55.5% of U.S.-based workers are compensated on an hourly basis, while the other 44.5% are salaried.[2]

51. According to the U.S. Bureau of Labor Statistics' 2018 American Time Use Survey, American adults have only 36 to 40 hours of "leisure time" outside of work per

---

[2] *Characteristics of minimum wage workers, 2020*, U.S. BUREAU OF LABOR STATISTICS https://www.bls.gov/opub/reports/minimum-wage/2020/home.htm#:~:text=%20In%202020%2C%2073.3%20million%20workers,wage%20of%20%247.25%20per%20hour (last accessed April 7, 2025); *Average Weekly Wage Data*, U.S. BUREAU OF LABOR STATISTICS, *Average Weekly Wage Data, https://www.bls.gov/news.release/pdf/wkyeng.pdf* (last accessed April 5, 2025) (finding that on average, private-sector workers make $1,145 per 40-hour work week.).

week;[3] leisure time is defined as time not occupied with work or chores and is "the time equivalent of 'disposable income.'"[4] Usually, this time can be spent at the option and choice of the consumer, however, having been notified of the Data Breach, consumers now have to spend hours of their leisure time self-monitoring their accounts, communicating with financial institutions and government entities, and placing other prophylactic measures in place to attempt to protect themselves.

52. Plaintiff and Class Members are now deprived of the choice as to how to spend their valuable free hours and seek remuneration for the loss of valuable time as another element of damages.

53. Upon information and belief, unauthorized third-party cybercriminals gained access to Plaintiff's and Class Members' Personal Information with the intent of engaging in misuse of the Personal Information, including marketing and selling Plaintiff's and Class Members' Personal Information.

54. Defendants have offered no measures to protect Plaintiff and Class Members from the lifetime risks they each now face. As another element of damages, Plaintiff and Class Members seek a sum of money sufficient to provide Plaintiff and Class Members identity theft protection services for life.

55. Defendants had and continue to have obligations created by reasonable industry standards, common law, state statutory law, and their own assurances and

---

[3] Cory Stieg, *You're spending your free time wrong — here's what to do to be happier and more successful*, CNBC https://www.cnbc.com/2019/11/06/how-successful-people-spend-leisure-time-james-wallman.html (Nov. 6, 2019) (last accessed April 5, 2025).
[4] *Id.*

representations to keep Plaintiff's and Class Members' Personal Information confidential and to protect such Personal Information from unauthorized access.

56. Plaintiff and Class Members remain, even today, in the dark regarding the scope of the data breach, what particular data was stolen, beyond several categories listed in the letter as "included" in the Data Breach, and what steps are being taken, if any, to secure their Personal Information going forward. Plaintiff and Class Members are left to speculate as to the full impact of the Data Breach and how exactly Defendants intend to enhance their information security systems and monitoring capabilities so as to prevent further breaches.

57. Plaintiff's and Class Members' Personal Information may end up for sale on the Dark Web, or simply fall into the hands of companies that will use the detailed Personal Information for targeted marketing without the approval of Plaintiff and/or Class Members. Either way, unauthorized individuals can now easily access the Personal Information and/or financial information of Plaintiff and Class Members.

***Defendanst Failed to Comply with FTC Guidelines***

58. According to the Federal Trade Commission ("FTC"), the need for data security should be factored into all business decision-making.[5] To that end, the FTC has issued numerous guidelines identifying best data security practices that businesses, such as

[5] *Start with Security: A Guide for Business*, FED. TRADE COMM'N (June 2015), https://bit.ly/3uSoYWF (last accessed April 5, 2025).

Defendants, should employ to protect against the unlawful exfiltration of Personal Information.

59. In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established guidelines for fundamental data security principles and practices for business.[6] The guidelines explain that businesses should:

a. protect the personal customer information that they keep;

b. properly dispose of personal information that is no longer needed;

c. encrypt information stored on computer networks;

d. understand their network's vulnerabilities; and

e. implement policies to correct security problems.

60. The guidelines also recommend that businesses watch for large amounts of data being transmitted from the system and have a response plan ready in the event of a breach.

61. The FTC recommends that companies not maintain Personal Information longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.[7]

---

[6] *Protecting Personal Information: A Guide for Business*, FED. TRADE COMM'N (Oct. 2016), https://bit.ly/3u9mzre (last accessed April 5, 2025).

[7] *See Start With Security, A Guide for Business*, FED. TRADE COMMISSION, https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf (last accessed April 7, 2025).

62. The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

63. Defendants' failure to employ reasonable and appropriate measures to protect against unauthorized access to Personal Information constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

***Defendants Failed to Follow Industry Standards***

64. Despite their alleged commitments to securing sensitive data, Defendants do not follow industry standard practices in securing Personal Information.

65. Experts studying cyber security routinely identify financial service providers as being particularly vulnerable to cyberattacks because of the value of the Personal Information which they collect and maintain.

66. Several best practices have been identified that at a minimum should be implemented by financial service providers like Defendants, including but not limited to, educating all employees; strong passwords; multi-layer security, including firewalls, anti-virus, and anti-malware software; encryption, making data unreadable without a key; multi-factor authentication; backup data; and limiting which employees can access sensitive data.

67. Other best cybersecurity practices that are standard in the financial service industry include installing appropriate malware detection software; monitoring and

limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches and routers; monitoring and protection of physical security systems; protection against any possible communication system; training staff regarding critical points.

68. Defendants failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework Version 1.1 (including without limitation PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

69. Such frameworks are the existing and applicable industry standards in the financial service industry. Defendants failed to comply with these accepted standards, thus opening the door to criminals and the Data Breach.

***The Experiences and Injuries of Plaintiff and Class Members***

70. Plaintiff and Class Members are current and former employees of Defendants' clients. As a prerequisite of obtaining services, Defendants required Plaintiff and Class Members to disclose their Personal Information.

71. Plaintiff suffered actual injury and damages as a result of the Data Breach. Plaintiff would not have provided Defendants with his Personal Information had Defendants disclosed that they lacked security practices adequate to safeguard PII and PHI.

72. Plaintiff suffered actual injury in the form of damages and diminution in the value of his Personal Information – a form of intangible property that he entrusted to Defendants.

73. Plaintiff suffered lost time, annoyance, interference, and inconvenience as a result of the Data Breach and has anxiety and increase concerns for the loss of his privacy, especially his PHI.

74. Plaintiff reasonably believes that his Personal Information may have already been sold to by the cybercriminals. Had he been notified of Defendants' Data Breach in a more timely manner, he could have attempted to mitigate his injuries.

75. Indeed, Plaintiff has already experienced actual fraud and identity theft. On March 31, 2025, Plaintiff cancelled his debit card after noticing fraudulent charges on his account in varying amounts. The victim of fraud, Plaintiff was charged overdraft fees due to these charges and continues to spend his time attempting to resolve these issues.

76. Plaintiff has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from his stolen Personal Information being placed in the hands of unauthorized third parties and possibly criminals.

77. Plaintiff has a continuing interest in ensuring that his Personal Information, which upon information and belief remains backed up and in Defendants' possession, is protected and safeguarded from future breaches.

78. When Defendant Southeast Series finally announced the Data Breach, it deliberately underplayed the Breach's severity and obfuscated the nature of the Breach.

Defendant Southeast Series' Breach Notice fails to explain how the breach occurred (what security weakness was exploited), what exact data elements of each affected individual were compromised, who the Data Breach was perpetrated by, and the extent to which those data elements were compromised.

79. Because of the Data Breach, Defendants inflicted injuries upon Plaintiff and Class Members. And yet, Defendants have done little to provide Plaintiff and the Class Members with relief for the damages they suffered.

80. All Class Members were injured when Defendants caused their Personal Information to be obtained by cybercriminals.

81. Plaintiff and Class Members entrusted their Personal Information to Defendants. Thus, Plaintiff had the reasonable expectation and understanding that Defendant would take—*at minimum*—industry standard precautions to protect, maintain, and safeguard that information from unauthorized users or disclosure, and would timely notify them of any data security incidents. Plaintiff and Class Members would not have entrusted their Personal Information to Defendants had they known that Defendants would not take reasonable steps to safeguard their information.

82. Plaintiff and Class Members suffered actual injury from having their Personal Information compromised in the Data Breach including, but not limited to, (a) damage to and diminution in the value of their Personal Information—a form of property that Defendants obtained from Plaintiff; (b) violation of their privacy rights; (c) the likely theft of their Personal Information; (d) fraudulent activity resulting from the Data Breach;

and (e) present and continuing injury arising from the increased risk of additional identity theft and fraud.

83. As a result of the Data Breach, Plaintiff and Class Members also suffered emotional distress because of the release of their Personal Information—which they believed would be protected from unauthorized access and disclosure. Now, Plaintiff and Class Members suffer from anxiety about unauthorized parties viewing, selling, and/or using their Personal Information for nefarious purposes like identity theft and fraud.

84. Plaintiff and Class Members also suffer anxiety about unauthorized parties viewing, using, and/or publishing their information related to their medical records and prescriptions.

85. Because of the Data Breach, Plaintiff and Class Members have spent—and will continue to spend—considerable time and money to try to mitigate and address harms caused by the Data Breach.

***Plaintiff and the Proposed Class Face Significant Risk of Present and Continuing Identity Theft***

86. Plaintiff and Class Members suffered injury from the misuse of their Personal Information that can be directly traced to Defendants.

87. The ramifications of Defendants' failure to keep Plaintiff's and the Class's Personal Information secure are severe. Identity theft occurs when someone uses another's personal such as that person's name, account number, Social Security number, driver's

license number, date of birth, and/or other information, without permission, to commit fraud or other crimes.

88. As a result of Defendants' failures to prevent—and to timely detect—the Data Breach, Plaintiff and Class Members suffered and will continue to suffer damages, including monetary losses, lost time, anxiety, and emotional distress. They have suffered or are at an increased risk of suffering:

a. The loss of the opportunity to control how their Personal Information is used;

b. The diminution in value of their Personal Information;

c. The compromise and continuing publication of their Personal Information;

d. Out-of-pocket costs associated with the prevention, detection, recovery, and remediation from identity theft or fraud;

e. Lost opportunity costs and lost wages associated with the time and effort expended addressing and attempting to mitigate the actual and future consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest, and recover from identity theft and fraud;

f. Delay in receipt of tax refund monies;

g. Unauthorized use of stolen Personal Information; and

h. The continued risk to their Personal Information, which remains in the possession of Defendants and is subject to further breaches so long as

Defendant fail to undertake the appropriate measures to protect the Personal Information in their possession.

89. Stolen Personal Information is one of the most valuable commodities on the criminal information black market. According to Experian, a credit-monitoring service, stolen Personal Information can be worth up to $1,000.00 depending on the type of information obtained.[8]

90. The value of Plaintiff's and the proposed Class's Personal Information on the black market is considerable. Stolen Personal Information trades on the black market for years, and criminals frequently post stolen private information openly and directly on various "Dark Web" sites, making the information publicly available, for a substantial fee of course.

91. It can take victims years to spot or identify Personal Information theft, giving criminals plenty of time to milk that information for cash.

92. One such example of criminals using Personal Information for profit is the development of "Fullz" packages.[9]

---

[8] Brian Stack, "Here's How Much Your Personal Information Is Selling for on the Dark Web," EXPERIAN (Dec. 6, 2017) https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/ (last accessed April 7, 2025).

[9] "Fullz" is fraudster-speak for data that includes the information of the victim, including, but not limited to, the name, address, credit card information, social security number, date of birth, and more. As a rule of thumb, the more information you have on a victim, the more money can be made off those credentials. Fullz are usually pricier than standard credit card credentials, commanding up to $100 per record or more on the dark web. Fullz can be cashed out (turning credentials into money) in various ways, including performing bank transactions over the phone with the required authentication details in-hand. Even "dead Fullz", which are Fullz credentials associated with credit cards that are no longer valid, can still be used for numerous purposes, including tax refund scams, ordering credit cards on behalf of the victim, or opening a "mule account" (an account that will accept a fraudulent money transfer from a compromised account) without the victim's knowledge. *See, e.g.*, Brian Krebs, "Medical Records For Sale in Underground

93. Cyber-criminals can cross-reference two sources of Personal Information to marry unregulated data available elsewhere to criminally stolen data with an astonishingly complete scope and degree of accuracy in order to assemble complete dossiers on individuals. These dossiers are known as "Fullz" packages.

94. The development of "Fullz" packages means that stolen Personal Information from the Data Breach can easily be used to link and identify it to Plaintiff's and the proposed Class's phone numbers, email addresses, and other unregulated sources and identifiers. In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the Personal Information stolen by the cyber-criminals in the Data Breach, criminals can easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over. That is exactly what is happening to Plaintiff and Class Members, and it is reasonable for any trier of fact, including this Court or a jury, to find that Plaintiff's and Class Members' stolen Personal Information is being misused, and that such misuse is fairly traceable to the Data Breach.

95. According to the FBI's Internet Crime Complaint Center (IC3) 2023 Internet Crime Report, the most recent year for which there is a report available, there were a record number of complaints in 2023 and Internet-related crimes reached their highest number of complaints and dollar losses that year, resulting in more than $12.5 billion dollars in

---

Stolen From Texas Life Insurance Firm," KREBS ON SECURITY, (Sep. 18, 2014) https://krebsonsecurity.com/tag/fullz/ (last accessed April 7, 2025).

losses.[10] Further, the number of complaints and the dollar losses for data breach-related crimes have continued to increase.[11]

96. Further, according to the same report, "[i]information reported to the FBI helps advance [the FBI's] investigations" and is "critical" in the fight against cybercrime.[12] Defendants failed to timely report that Plaintiff and Class Members' Personal Information had been stolen.

97. Victims of identity theft also often suffer embarrassment, blackmail, or harassment in person or online, and/or experience financial losses resulting from fraudulently opened accounts or misuse of existing accounts.

98. In addition to out-of-pocket expenses that can exceed thousands of dollars and the emotional toll identity theft can take, some victims have to spend a considerable time repairing the damage caused by the theft of their Personal Information. Victims of new account identity theft will likely have to spend time correcting fraudulent information in their credit reports and continuously monitor their reports for future inaccuracies, close existing bank/credit accounts, open new ones, and dispute charges with creditors.

99. Further complicating the issues faced by victims of identity theft, data thieves may wait years before attempting to use the stolen Personal Information. To protect

---

[10] *Federal Bureau of Investigation Internet Crime Report 2023*, Internet Crime Complaint Center, available at https://www.ic3.gov/AnnualReport/Reports/2023_IC3Report.pdf (last accessed April 7, 2025).
[11] *Id.*
[12] *Id.*

themselves, Plaintiff and Class Members will need to remain vigilant against unauthorized data use for years or even decades to come.

100. The FTC has also recognized that consumer data is a valuable form of currency. In an FTC roundtable presentation, former Commissioner Pamela Jones Harbour stated that "most consumers cannot begin to comprehend the types and amount of information collected by businesses, or why their information may be commercially valuable. Data is currency. The larger the data set, the greater potential for analysis—and profit."[13]

***Defendants Failed to Comply with FTC Guidelines***

101. The FTC has also issued numerous guidelines for businesses that highlight the importance of reasonable data security practices. The FTC has noted the need to factor data security into all business decision-making.[14] According to the FTC, data security requires: (1) encrypting information stored on computer networks; (2) retaining payment card information only as long as necessary; (3) properly disposing of personal information that is no longer needed; (4) limiting administrative access to business systems; (5) using industry-tested and accepted methods for securing data; (6) monitoring activity on networks to uncover unapproved activity; (7) verifying that privacy and security features

[13] "Commissioner Pamela Jones Harbour: Remarks Before FTC Exploring Privacy Roundtable," FED. TRADE COMMISSION (Dec. 7, 2009), https://www.ftc.gov/sites/default/files/documents/public_statements/remarks-ftc-exploring-privacy-roundtable/091207privacyroundtable.pdf (last accessed April 7, 2025).

[14] "Start With Security, A Guide for Business," FED. TRADE COMMISSION, https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf (last accessed April 7, 2025).

function properly; (8) testing for common vulnerabilities; and (9) updating and patching third-party software.[15]

102. According to the FTC, unauthorized Personal Information disclosures are extremely damaging to consumers' finances, credit history and reputation, and can take time, money, and patience to resolve the fallout.[16] The FTC treats the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5(a) of the FTC Act (the "FTCA").

103. To that end, the FTC has issued orders against businesses that failed to employ reasonable measures to secure sensitive payment card data. See *In the matter of Lookout Services, Inc.*, No. C-4326, Complaint ⁋ 7 (June 15, 2011) ("[Respondent] allowed users to bypass authentication procedures" and "failed to employ sufficient measures to detect and prevent unauthorized access to computer networks, such as employing an intrusion detection system and monitoring system logs."); *In the matter of DSW, Inc.*, No. C-4157, ⁋ 7 (Mar. 7, 2006) ("[Respondent] failed to employ sufficient measures to detect unauthorized access."); *In the matter of The TJX Cos., Inc.*, No. C-4227 (Jul. 29, 2008) ("[R]espondent stored . . . personal information obtained to verify checks and process unreceipted returns in clear text on its in-store and corporate networks[,]" "did not require network administrators . . . to use different passwords to access different programs,

[15] *Id.*
[16] "Taking Charge, What to Do If Your Identity is Stolen," U.S. DEPARTMENT OF JUSTICE, at 3 (January 2012), https://www.ojp.gov/ncjrs/virtual-library/abstracts/taking-charge-what-do-if-your-identity-stolen (last accessed April 7, 2025).

computers, and networks[,]" and "failed to employ sufficient measures to detect and prevent unauthorized access to computer networks . . ."); *In the matter of Dave & Buster's Inc.*, No. C-4291 (May 20, 2010) ("[Respondent] failed to monitor and filter outbound traffic from its networks to identify and block export of sensitive personal information without authorization" and "failed to use readily available security measures to limit access between instore networks . . .").

104. These orders, which all preceded the Data Breach, further clarify the measures businesses must take to meet their data security obligations. Defendants thus knew or should have known that its data security protocols were inadequate and were likely to result in the unauthorized access to and/or theft of Personal Information.

***Defendants Failed to Comply with HIPAA***

105. Because of their involvement with electronic personal health information ("PHI"), Defendants are "Business Associates" as defined under the rules and regulations promulgated pursuant to the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") (45 CFR Parts 160 to 164). The HIPAA "Security Rule," published in 2003, addresses the requirement that both Covered Entities and Business Associates, as defined therein, adopt security procedures to assure the confidentiality, integrity, and availability of personal health care information, or PHI (45 CFR Part 160 and Subparts A and C of Part 164).[17]

---

[17] *Summary of the HIPAA Security Rule*, U.S. Department of Health and Human Services, https://www.hhs.gov/hipaa/for-professionals/security/laws-regulations/index.html (last accessed April 7, 2025).

106. Business Associates are directly liable for violations of the HIPAA Security Rule (See HITECH Act 13401, 42 U.S.C. 17931 (making 45 CFR 164.308, 164.310, 164.312, and 164.316 directly applicable to business associates, as well as any other security provision that the HITECH Act made applicable to covered entities); 45 CFR 164.306, 164.308, 164.310, 164.312, 164.314, 164.316.

107. Data Breach is a Security Incident under HIPAA because it impaired both the integrity (data is not interpretable) and availability (data is not accessible) of PHI held by Defendant:

> The presence of ransomware (or any malware) on a covered entity's or business associate's computer systems is a security incident under the HIPAA Security Rule. A security incident is defined as the attempted or successful unauthorized access, use, disclosure, modification, or destruction of information or interference with system operations in an information system. See the definition of security incident at 45 C.F.R. 164.304. Once the ransomware is detected, the covered entity or business associate must initiate its security incident and response and reporting procedures. See 45 C.F.R.164.308(a)(6).[18]

108. The Data Breach is also considered a breach under the HIPAA Rules because there was an access of PHI not permitted under the HIPAA Privacy Rule:

> A breach under the HIPAA Rules is defined as, "...the acquisition, access, use, or disclosure of PHI in a manner not permitted under the [HIPAA Privacy Rule] which compromises the security or privacy of the PHI." See 45 C.F.R. 164.402.[19]

109. The Security Incident Procedures standard at 45 C.F.R. § 164.308(a)(6)(i) requires a covered entity to implement policies and procedures to address security

---

[18] *FACT SHEET: Ransomware and HIPAA*, U.S. Department of Health and Human Services Office for Civil Rights, https://www.hhs.gov/sites/default/files/RansomwareFactSheet.pdf (last accessed April 7, 2025).

[19] *Id.*

incidents. The associated implementation specification for response and reporting at § 164.308(a)(6)(ii) requires a covered entity to identify and respond to suspected or known security incidents, mitigate, to the extent practicable, harmful effects of security incidents that are known to the covered entity, and document security incidents and their outcomes.

110. Defendants failed to comply with HIPAA, both prior to and after suffering the Data Breach.

111. Charged with handling highly sensitive Personal Information including, financial information, and health and medical insurance information, Defendants knew or should have known the importance of safeguarding the Personal Information that was entrusted to them. Defendants also knew or should have known of the foreseeable consequences if their data security systems were breached. This includes the significant costs that would be imposed on Defendants' customers as a result of a breach. Defendants nevertheless failed to take adequate cybersecurity measures to prevent the Data Breach from occurring.

112. Defendant's use of outdated and insecure computer systems and software that are easy to hack, and its failure to maintain adequate security measures and an up-to-date technology security strategy, demonstrates a willful and conscious disregard for privacy, and has failed to adequately protect the Personal Information of Plaintiff and potentially thousands of members of the proposed Class to unscrupulous operators, con artists, and outright criminals.

113. Defendants' failure to properly and promptly notify Plaintiff and Class Membersof the Data Breach exacerbated Plaintiff's and Class Members' injury by

depriving them of the ability to take appropriate measures to protect their Personal Information and take other necessary steps to mitigate the harm caused by the Data Breach as soon as possible.

## **CLASS ACTION ALLEGATIONS**

114. Plaintiff brings this action individually and on behalf of all other persons similarly situated ("the Class") under Fed. R. Civ. P. 23(b)(2), 23(b)(3), and 23(c)(4).

115. Plaintiff proposes the following Class definition, subject to amendment as appropriate:

> All persons residing in the United States whose Personal Information was impacted by the Data Breach announced by The Southeast Series of Lockton Companies, LLC, on or about March 28, 2025.

116. The Class defined above is readily ascertainable from information in Defendant's possession. Thus, such identification of Class Members will be reliable and administratively feasible.

117. Excluded from the Class are: (1) any judge or magistrate presiding over this action and members of their families; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, affiliated entities, and any entity in which Defendants have a controlling interest, and these entities' current or former officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendants' counsel; (6) members of the jury; and (7) the legal representatives, successors, and assigns of any such excluded persons.

118. Plaintiff reserves the right to amend or modify the Class definition—including potential Subclasses—as this case progresses.

119. Plaintiff and Class Members satisfy the numerosity, commonality, typicality, and adequacy requirements under Fed. R. Civ. P. 23.

120. **Numerosity**. The Class Members are numerous such that joinder is impracticable. While the exact number of Class Members is unknown to Plaintiff at this time, based on information and belief, the Class consists of thousands of individuals who reside in the U.S. and were or are current or former employees of Defendants' clients, and whose Personal Information was compromised by the Data Breach.

121. **Commonality**. There are many questions of law and fact common to the Class. And these common questions predominate over any individualized questions of individual Class Members. These common questions of law and fact include, without limitation:

a. Whether Defendants unlawfully used, maintained, lost, or disclosed Plaintiff's and Class Members' Personal Information;

b. Whether Defendants failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

c. Whether Defendants' data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

d. Whether Defendants' data security systems prior to and during the Data Breach were consistent with industry standards;

e. Whether Defendants owed a duty to Class Members to safeguard their Personal Information;

f. Whether Defendants breached their duty to Class Members to safeguard their Personal Information;

g. Whether Defendants failed to comply with the HIPAA Security Rule (45 CFR 160 and Subparts A and C of Part 164) by failing to implement reasonable security procedures and practices to protect the integrity and availability of PHI;

h. Whether Defendants knew or should have known that its data security systems and monitoring processes were deficient;

i. Whether Defendants should have discovered the Data Breach earlier;

j. Whether Defendants took reasonable measures to determine the extent of the Data Breach after it was discovered;

k. Whether Defendants failed to provide notice of the Data Breach in a timely manner;

l. Whether Defendants' delay in informing Plaintiff and Class Members of the Data Breach was unreasonable;

m. Whether Defendants' method of informing Plaintiff and Class Members of the Data Breach was unreasonable;

n. Whether Defendants' conduct was negligent;

o. Whether Plaintiff and Class Members were injured as a proximate cause or result of the Data Breach;

p. Whether Plaintiff and Class Members suffered legally cognizable damages as a result of Defendants' misconduct;

q. Whether Defendants breached implied contracts with Plaintiff and Class Members;

r. Whether Defendantst was unjustly enriched as a result of their insufficient data security practices; and

s. Whether Plaintiff and Class Members are entitled to damages, civil penalties, punitive damages, treble damages, and/or injunctive relief.

122. **Typicality**. Plaintiff's claims are typical of those of other Class Members because Plaintiff's information, like that of every other Class Member, was compromised in the Data Breach. Moreover, all Plaintiff and Class Members were subjected to Defendants' uniformly illegal and impermissible conduct.

123. **Adequacy of Representation**. Plaintiff will fairly and adequately represent and protect the interests of the Members of the Class. Plaintiff's Counsel are competent and experienced in litigating complex class actions. Plaintiff has no interests that conflict with, or are antagonistic to, those of the Class.

124. **Predominance**. Defendants have engaged in a common course of conduct toward Plaintiff and Class Members, in that all the Plaintiff and Class Members' data was stored on the same network system and unlawfully and inadequately protected in the same

way. The common issues arising from Defendants' conduct affecting Class Members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

125. **Superiority**. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a class action, most Class Members would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Defendants. In contrast, the conduct of this action as a class action presents far fewer management difficulties, conserves judicial resources, the parties' resources, and protects the rights of each Class Member.

126. The litigation of the claims brought herein is manageable. Defendants' uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class Members demonstrate that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

127. Adequate notice can be given to Class Members directly using information maintained in Defendants' records.

128. Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of

which would advance the disposition of this matter and the parties' interests therein. Such particular issues include those set forth above.

129. Defendants have acted on grounds that apply generally to the Class as a whole, so that Class certification, injunctive relief, and corresponding declaratory relief are appropriate on a Class-wide basis.

**FIRST CAUSE OF ACTION**
**Negligence**
**(On Behalf of Plaintiff and the Class)**

130. Plaintiff re-alleges and incorporate by reference paragraphs 1-129 of the Complaint as if fully set forth herein.

131. Defendants required Plaintiff and Class Members to submit non-public Personal Information to Defendants.

132. Because Defendants collected and stored this data on their computer system and network and shared it and used it for commercial gain, Defendants owed a duty of care to use reasonable means to secure and safeguard their computer systems—and Plaintiff's and Class Members' Personal Information held within it—to prevent disclosure of the information, and to safeguard the information from theft. Defendants' duty included a responsibility to implement processes so they could detect a breach of their security systems in a reasonably expeditious period of time and to give prompt notice to those affected in the case of a data breach.

133. The risk that unauthorized persons would attempt to gain access to the Personal Information and misuse it was foreseeable to Defendants. Given that Defendants

hold vast amounts of Personal Information, it was inevitable that unauthorized individuals would at some point try to access Defendants' databases of Personal Information.

134. Personal Information is highly valuable, and Defendants knew, or should have known, the risk in obtaining, using, handling, emailing, and storing the Personal Information of Plaintiff and Class Members. Thus, Defendants knew, or should have known, the importance of exercising reasonable care in handling the Personal Information entrusted to them.

135. Defendants owed a duty of care to Plaintiff and Class Members to provide data security consistent with industry standards and other requirements discussed herein, and to ensure that their or their service providers' systems and networks, and the personnel responsible for them, adequately protected the Personal Information.

136. Defendants; duty of care to use reasonable security measures arose because of the special relationship that existed between Defendants and Plaintiff and Class Members, which is recognized by laws and regulations, as well as common law. Defendants were in a superior position to ensure that their and their service providers' systems were sufficient to protect against the foreseeable risk of harm to Class Members from a data breach.

137. Defendants failed to take appropriate measures to protect the Personal Information of Plaintiff and the Class. Defendants are culpable, given the frequency of security breaches in the financial services industry, including the insurance industry. Any purported safeguards that Defendants had in place were wholly inadequate.

138. Defendants breached their duty to exercise reasonable care in safeguarding and protecting Plaintiff's and the Class members' Personal Information by failing to adopt, implement, and maintain adequate security measures to safeguard that information, despite known data breaches in the financial service industry, and allowing unauthorized access to Plaintiff's and the other Class Members' Personal Information.

139. Defendants were negligent in failing to comply with industry and federal regulations in respect of safeguarding and protecting Plaintiff's and Class Members' Personal Information.

140. But for Defendants' wrongful and negligent breach of its duties to Plaintiff and Class Members, Plaintiff's and Class Members' Personal Information would not have been compromised, stolen, and viewed by unauthorized persons. Defendants' negligence was a direct and legal cause of the theft of the Personal Information of Plaintiff and Class Members and all resulting damages.

141. Defendants owed Plaintiff and Class Members a duty to notify them within a reasonable time frame of any breach to its Personal Information. Defendants also owed a duty to timely and accurately disclose to Plaintiff and Class Members the scope, nature, and occurrence of the Data Breach. Fulfillment of this duty is necessary for Plaintiff and Class Members to take appropriate measures to protect its Personal Information, to be vigilant in the face of an increased risk of harm, and to take other necessary steps in an effort to mitigate the fallout of the Data Breach.

142. Defendants owed these duties to Plaintiff and Class Members because they are members of a well-defined, foreseeable, and probable class of individuals who

Defendants knew or should have known would suffer injury-in-fact from their inadequate security protocols. After all, Defendants actively sought and obtained the Personal Information of Plaintiff and Class Members.

143. Defendants breached its duties, and thus was negligent, by failing to use reasonable measures to protect Plaintiff's and Class Members' Personal Information. The specific negligent acts and omissions committed by Defendants include, but are not limited to:

a. Failing to adopt, implement, and maintain adequate security measures to safeguard Class Members' Personal Information;

b. Failing to comply with—and thus violating—FTCA, HIPAA and the applicable regulations;

c. Failing to adequately monitor the security of their networks and systems;

d. Failing to have in place mitigation policies and procedures;

e. Allowing unauthorized access to Class Members' Personal Information;

f. Failing to detect in a timely manner that Class Members' Personal Information had been compromised; and

g. Failing to timely notify Class Members about the Data Breach so that they could take appropriate steps to mitigate the potential for identity theft and other damages.

144. It was foreseeable that Defendants' failure to use reasonable measures to protect Class Members' Personal Information would result in injury to Class Members. Furthermore, the breach of security was reasonably foreseeable given the known high frequency of cyberattacks and data breaches. It was therefore foreseeable that the failure to adequately safeguard Class Members' Personal Information would result in one or more types of injuries to Class Members.

145. The injury and harm suffered by Plaintiff and Class Members was the reasonably foreseeable result of Defendants' failure to exercise reasonable care in safeguarding and protecting Plaintiff's and the other Class members' Personal Information. Defendants knew or should have known that the systems and technology they used to process and secure the Personal Information of Plaintiff and Class Members had security vulnerabilities.

146. As a result of Defendants' negligence, the Personal Information and other sensitive information of Plaintiff and Class Members was compromised, placing them at a greater risk of identity theft and their Personal Information being disclosed to third parties without the consent of Plaintiff and Class Members.

147. Simply put, Defendants' negligence actually and proximately caused Plaintiff and Class Members actual, tangible, injuries-in-fact and damages. These injuries include, but are not limited to, the theft of their Personal Information by criminals, improper disclosure of their Personal Information, lost benefit of their bargain, lost value of their Personal Information, and lost time and money incurred to mitigate and remediate the effects of the Data Breach that resulted from and were caused by Defendants'

negligence. Moreover, injuries-in-fact and damages are ongoing, imminent, and immediate.

148. Plaintiff and Class Members are entitled to compensatory and consequential damages suffered because of the Data Breach.

149. Plaintiff and Class Members are also entitled to injunctive relief requiring Defendants to, *e.g.,* (1) strengthen their data security systems and monitoring procedures; (2) submit to future annual audits of those systems and monitoring procedures; and (3) continue to provide adequate credit monitoring to all Class Members for a period of ten years.

**<u>SECOND CAUSE OF ACTION</u>**
**Negligence *Per Se***
**(On Behalf of Plaintiff and the Class)**

150. Plaintiff re-alleges and incorporates by reference paragraphs 1-128 of the Complaint as if fully set forth herein.

151. Under the Federal Trade Commission Act, Defendants had a duty to employ reasonable security measures. Specifically, this statute prohibits "unfair . . . practices in or affecting commerce," including (as interpreted and enforced by the FTC) the unfair practice of failing to use reasonable measures to protect confidential data.[20]

152. Moreover, Plaintiff's and Class Members' injuries are precisely the type of injuries that the FTCA guards against. After all, the FTC has pursued numerous enforcement actions against businesses that—because of their failure to employ reasonable

---

[20] 15 U.S.C. § 45.

data security measures and avoid unfair and deceptive practices—caused the very same injuries that Defendants inflicted upon Plaintiff and Class Members.

153. Defendants' duty to use reasonable care in protecting confidential data arose not only because of the statutes and regulations described above, but also because Defendant is bound by industry standards to protect confidential Personal Information.

154. Defendants violated their duties and its obligations under HIPAA as a Business Associate, as shown by the Data Breach.

**THIRD CAUSE OF ACTION**
**Unjust Enrichment**
**(On Behalf of the Plaintiff and the Class)**

155. Plaintiff re-alleges and incorporates by reference paragraphs 1-128 of the Complaint as if fully set forth herein.

156. Plaintiff and Class Members conferred a monetary benefit on Defendants. Specifically, they provided their Personal Information to Defendants, which Defendants used to operate their business and generate profit. In exchange, Plaintiff and Class Members should have had their Private Information protected with adequate data security.

157. Defendants knew Plaintiff and Class Members conferred a benefit upon them and accepted that benefit by retaining the Private Information and using it to generate revenue.

158. Defendants failed to secure Plaintiff's and Class Members' Personal Information and, therefore, did not fully compensate Plaintiff or Class Members for the value that their Private Information provided Defendants.

159. Defendants acquired the Private Information through inequitable record retention as it failed to investigate and/or disclose the inadequate data security practices previously alleged.

160. Defendants enriched themselves by saving the costs it reasonably should have expended on data security measures to secure Plaintiff's and Class Members' Personal Information. Instead of providing a reasonable level of security that would have prevented the hacking incident, Defendants calculated to increase their own profits at the expense of Plaintiff and Class Members by utilizing cheaper, ineffective security measures and diverting those funds to its own pocket. Plaintiffs and Class Members, on the other hand, suffered as a direct and proximate result of Defendants' decision to prioritize its own profits over the requisite security and the safety of customers' Private Information.

161. Under the circumstances, it would be unjust for Defendants to retain the benefits that Plaintiff and Class Members conferred upon them. As a direct and proximate result of Defendants' conduct, Plaintiff and Class Members have suffered and will suffer injuries and damages as set forth herein. 210. Plaintiff and Class Members are entitled to full refunds, restitution, and/or damages from Defendants and/or an order proportionally disgorging all profits, benefits, and other compensation obtained by Defendants from their wrongful conduct. This can be accomplished by establishing a constructive trust from which the Plaintiff and Class Members may seek restitution or compensation.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff, individually and on behalf of all others similarly situated, requests the following relief:

A. An Order certifying this action as a class action and appointing Plaintiff as Class representatives, and the undersigned as Class Counsel;

B. A mandatory injunction directing Defendants to adequately safeguard the Personal Information of Plaintiff and the Class hereinafter by implementing improved security procedures and measures, including but not limited to an Order:

i. prohibiting Defendants from engaging in the wrongful and unlawful acts described herein;

ii. requiring Defendants to protect, including through encryption, all data collected through the course of business in accordance with all applicable regulations, industry standards, and federal, state or local laws;

iii. requiring Defendants to delete and purge the Personal Information of Plaintiff and Class Members unless Defendants can provide to the Court reasonable justification for the retention and use of such information when weighed against the privacy interests of Plaintiff and Class Members;

iv. requiring Defendants to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality

and integrity of Plaintiff's and Class Members' Personal Information;

v. requiring Defendants to engage independent third-party security auditors and internal personnel to run automated security monitoring, simulated attacks, penetration tests, and audits on Defendants' systems on a periodic basis;

vi. prohibiting Defendant from maintaining Plaintiff's and Class Members' Personal Information on a cloud-based database until proper safeguards and processes are implemented;

vii. requiring Defendants to segment data by creating firewalls and access controls so that, if one area of Defendant's network is compromised, hackers cannot gain access to other portions of Defendant's systems;

viii. requiring Defendants to conduct regular database scanning and securing checks;

ix. requiring Defendants to monitor ingress and egress of all network traffic;

x. requiring Defendants to establish an information security training program that includes at least annual information security training for all employees, with additional training to be provided as appropriate based upon the employees' respective responsibilities with handling Personal Information, as well as protecting the Personal Information of Plaintiff and Class Members;

xi. requiring Defendants to implement a system of tests to assess their employees' knowledge of the education programs discussed in the preceding subparagraphs, as well as randomly and periodically testing employees' compliance with Defendants' policies, programs, and systems for protecting personal identifying information;

xii. requiring Defendants to implement, maintain, review, and revise as necessary a threat management program to appropriately monitor Defendants' networks for internal and external threats, and assess whether monitoring tools are properly configured, tested, and updated;

xiii. appointing an independent and qualified cyber auditor to monitor Defendants' cyber hygiene, to be funded by Defendants; and

xiv. requiring Defendants to meaningfully educate all Class Members about the threats that they face because of the loss of its confidential personal identifying information to third parties, as well as the steps affected individuals must take to protect themselves.

C. A mandatory injunction requiring that Defendants provide notice to each Class Member relating to the full nature and extent of the Data Breach and the disclosure of Personal Information to unauthorized persons;

D. A mandatory injunction requiring Defendants to purchase credit monitoring and identity theft protection services for each Class Member for ten years;

E. An injunction enjoining Defendants from further deceptive practices and making untrue statements about the Data Breach and the stolen Personal Information;

F. An award of damages, including actual, nominal, consequential damages, and punitive, as allowed by law in an amount to be determined;

G. An award of attorneys' fees, costs, and litigation expenses, as allowed by law;

H. An award of pre- and post-judgment interest, costs, attorneys' fees, expenses, and interest as permitted by law;

I. Granting the Plaintiff and the Class leave to amend this Complaint to conform to the evidence produced at trial;

J. For all other Orders, findings, and determinations identified and sought in this Complaint; and

K. Such other and further relief as this court may deem just and proper.

**JURY TRIAL DEMANDED**

Under Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury for any and all issues in this action so triable as of right.

Dated: April 7, 2025

Respectfully Submitted,

*/s/ Maureen M. Brady*
Maureen M. Brady MO#57800
MCSHANE & BRADY, LLC
4006 Central Street
Kansas City, MO 64111
Telephone: (816) 888-8010
Facsimile: (816) 332-6295 E-mail:
mbrady@mcshanebradylaw.com

Jean S. Martin*
Francesca K. Burne*
MORGAN & MORGAN COMPLEX
LITIGATION GROUP
201 N. Franklin Street, Suite 700
Tampa, FL 33601

**Pro hac vice forthcoming*
***Counsel for Plaintiff and the Class***